THE BALTIMORE AND OHIO RAILROAD COMPANY
*vs.* THOMAS J. FITZPATRICK, by his next Friend.
THOMAS J. FITZPATRICK, by his next Friend, *vs.*
THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Action for Personal injuries—Negligence—Reasona-
ble care—Negligence, or the want of Ordinary care,
a question of Fact to be determined by the Jury—
Erroneous instruction — Negligence sometimes a
Question of law—A question of Fact for the Jury.*

To entitle the plaintiff, in an action against a railroad company, to recover damages for injuries sustained by him in being caught between two cars of the defendant, while he was attempting to cross a street, it must be shown that such injuries were directly caused by the want of ordinary care and prudence on the part of the defendant, and that they could not have been avoided by the exercise of reasonable care and caution on the part of the plaintiff.

If the plaintiff exercised reasonable care, though he may have been guilty of some negligence or want of caution, he is still entitled to recover for any injury sustained in consequence of the defendant's negligence.

In an action against a railroad company, to recover damages for injuries sustained by the plaintiff in consequence of the defendant's negligence, the question of negligence or the want of ordinary care, is one of fact for the consideration of the jury. The most that the Court can do in cases where there is a contrariety of evidence, and the question of care or negligence depends upon the consideration of a variety of circumstances, is to define the degree of care and caution exacted of the parties, and leave to the practical judgment and discretion of the jury, the work of comparing the acts and conduct of the parties concerned, with what would be the natural and ordinary course of prudent and discreet men under similar circumstances.

In an action against a railroad company to recover damages for injuries sustained by the plaintiff in attempting to pass between the cars of the defendant while the train was being made up on the street, a prayer which asked the Court to instruct the jury that the plaintiff could not recover, if they believed that the defendant left open spaces between the cars at all the regular crossings of the street, and that the accident did not happen at a regular crossing, was objectionable in that it ignored all

the circumstances tending to prove negligence on the part of the defendant, and would have precluded the plaintiff's right of recovery, though his injuries had been occasioned by the grossest negligence of the defendant, provided they were inflicted at a place other than a regular crossing of the street.

There are cases where the question of negligence may be properly one of law for the Court; but such cases always present some prominent and decisive act, not dependent upon surrounding circumstances for its quality, and in regard to the effect and character of which no room is left for ordinary minds to differ.

Whether cars, which were being placed in procession on Howard street, between the hours of 5 and 9, P. M., with the purpose of being drawn away to their regular place of destination, were *in actual service* within the meaning of an Ordinance of the city of Baltimore, and therefore not required to be fastened as cars were required to be by said Ordinance, when left standing on the street for a longer period than an hour, could only be determined by observation as matter of fact, and was therefore a question for the jury and not for the Court.

CROSS-APPEALS from the Court of Common Pleas.

*Plaintiff's Exception:* The plaintiff gave evidence, at the trial below, tending to show, that on the night of the 29th of November, 1870, between the hours of 8 and 9, the defendant had placed a line of cars, which it had been making up from 5 to 8 o'clock, P. M., extending down Howard street from above Wayne street, to a point below Barre street, so as to obstruct the crossings of said street at Barre and Wayne streets and the intermediate space between said streets, and that the plaintiff seeing an open space some five feet wide between said cars in front of his father's door, and hearing no signal of approaching danger, and seeing no person there, attempted to cross said street to his father's door through said open space while said cars were stationary, which was suddenly and violently closed by and through the careless management of a car under the control of the defendant's servants, whereby he had his jawbone fractured and his tongue mashed and was otherwise greatly injured; and that said cars had been standing on Howard street more than one hour before

said injury was occasioned; and that the plaintiff was thirteen years old in August, 1870; and further, that the wheels of the car by which the plaintiff was struck, were not fastened or chained in any way, although it was not connected with any other car, but stood by itself.   The plaintiff then read in evidence sections 1, 4, 6 and 7, of Article 39 of Ordinances relating to railroads, Baltimore City Code of 1869, 571–573.

The defendant then offered evidence tending to prove, that on the evening of the accident, and immediately after the happening thereof, the cars were standing on Howard street, as represented on the plat exhibited; that the cars were in actual service at the time, by reason of the train being in process of making up, by bringing these cars together on Howard street and coupling them to form a train to go out, as soon as made up, from the city; that the wheels of said cars had been fastened, in accordance with the city ordinance, while the train was thus being made up; and further, that the cars had not been there for one hour; and further, that there was no violation of any Ordinance of the city of Baltimore by the defendant or its agents, and that due care and diligence was exercised by the defendant's employees, and that while admitting the injury to the plaintiff, the defendant offered evidence tending to prove that it was altogether owing to his own want of care and diligence in attempting to pass between the cars through a narrow space between four and five feet wide, instead of a regular crossing all of which were left open by the defendant at the time of the accident.

And thereupon the plaintiff prayed the Court to instruct the jury as follows:

1. If the jury shall find from the evidence that the injuries to the plaintiff resulted directly from the want of ordinary care and caution on the part of the defendant's servants, or any of them, then the plaintiff is entitled to recover; provided the jury find that the accident causing his injuries

could not have been avoided by the exercise of such care and caution by the plaintiff as ought, under all the circumstances, to have been reasonably expected from one of his age and intelligence.

2. If the jury shall find from the evidence, that on the evening of the 29th November 1870, the defendant placed a number of its cars on its railroad track in South Howard street, and left two of said cars standing after nightfall on said track, with sufficient space between them to allow the free and unobstructed passage of persons, and left the wheels of one of said cars unfastened while so standing; and if the jury shall further find, that there was a want of ordinary care and prudence on the part of the defendant in the way in which said cars, situated as aforesaid, were by it forced together and said space closed, and that such want of ordinary care and prudence directly caused the injuries complained of in this case, then the plaintiff is entitled to recover; provided the jury find, under all the facts and circumstances in evidence, that the plaintiff did not contribute to such injuries by any want of ordinary care and prudence on his part.

3. If the jury find for the plaintiff, then, in estimating the damages, they are to consider the health and condition of the plaintiff before the injuries complained of, as compared with his present condition in consequence of the said injuries; and whether the said injuries are in their nature permanent, and how far they are calculated to disable the plaintiff from engaging in those business pursuits for which, in the absence of the said injuries, he would have been qualified; and also the physical and mental suffering to which he has been subjected by reason of the said injuries, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injuries which the plaintiff has suffered.

The Court (GAREY J.) rejected the first prayer and granted the second; the third was conceded. To the rejection of his first prayer the plaintiff excepted.

*Defendant's Exception:* The defendant offered the following prayers:

1. If the jury shall believe from the evidence that the boy Fitzpatrick was injured by attempting to pass between the cars of the defendant while the train was being made up, as testified to by the witness, and that such attempt was made at a place which was not a regular crossing, and was thereby injured, then the attempt to so pass between the cars was a want of ordinary care on his part, and the plaintiff cannot recover; and further, that the burden of proof is on the plaintiff to show that the accident occurred at a regular crossing of the street, and there being no proof offered by the plaintiff by which the jury can find that it did occur at such crossing, their verdict must be for the defendant.

2. If the jury shall believe from the evidence that the happening of the accident was caused by the want of ordinary care on the part of the person injured, then the plaintiff cannot recover, although they may find that the defendant was not at the time using ordinary care; provided, that the want of ordinary care on the part of the person injured, was the proximate cause of the injury; and that the attempt of the boy Fitzpatrick to pass between the cars of the defendant while the train was being made up, as testified to by the witnesses, constituted in itself a want of ordinary care on his part that was the proximate cause of the injury, and therefore the plaintiff cannot recover.

3. If the jury shall find from the evidence that the accident in question would have been avoided by the exercise of ordinary care and caution on the part of the injured person, the plaintiff cannot recover.

4. If the jury shall believe from the evidence, that at the time of the accident, some of the cars of the defendant were standing upon Howard street, while other cars were being brought from different sections of the city to be attached to those cars so standing upon Howard street, with the object of making up a train, and that openings were left between the

cars at the regular crossings of said street, and that the boy Fitzpatrick was injured by attempting to pass between said cars at a place which was not a regular crossing of said street, then such attempt to pass through the train at a place not a regular crossing, was such a want of ordinary care on his part that the plaintiff cannot recover.

5. If the jury shall believe from the evidence, that at the time of the accident, the defendant's servants were engaged in making up a train of cars on Howard street, and that they took the precaution to leave open spaces between the cars at all the regular crossings of said street, and that the accident in question did not happen at a regular crossing, then the jury must find that the defendant was using ordinary care in the premises, and the plaintiff cannot recover.

6. If the jury shall believe from the evidence, that at the time of the accident testified to by the witnesses, the cars of the defendant, as testified to by the witness Righter, were being placed in procession in Howard street, between the hours of 5 and 9 P. M., with the purpose of being drawn from there and sent to their regular destination, and that the plaintiff was caught between two of them, then the said cars were in actual service, within the meaning of the Ordinance of the city of Baltimore, relating to "Cars," at page 571 of Baltimore City Code, and were not obliged to be fastened together, as provided in the said Ordinance; even though the said cars, or any of them, may have been standing on Howard street, without being fastened for a period of one hour, neither was the company obliged to leave the openings in the train provided for in the same Ordinance, at page 573 of said Code.

7. That there is no evidence in the case, should the jury find for the plaintiff, of such wanton and malicious or gross and outrageous conduct on the part of the defendant, or its agents, as would warrant punitive damages, and that actual damages is all the plaintiff can recover.

The third and seventh prayers were conceded—the Court rejected the others.  Thereupon the defendant excepted to the rejection of its prayers, as also to the granting of the prayer of the plaintiff.  Judgment was rendered for the plaintiff for $8,000 and costs.  Both parties appealed.

The cause was argued before BARTOL, C. J., BRENT, ALVEY and ROBINSON, J.

*Ferdinand C. Latrobe,* for the Baltimore and Ohio Rail Road Company.

The Court erred in rejecting the defendant's first prayer. The defendant clearly had the right to use its track upon the bed of the street for the purpose of making up its train, and as long as it obeyed the provisions of the City Ordinance (*City Code, folio* 573) by leaving the crossings open, if the jury believe it did so, it was violating no law.  If the boy Fitzpatrick saw fit in crossing the street, at night, while this train was so being made up, to use a narrow space between two cars, and not the regular crossing which the law provided for him, the Court should have declared such act to be in law negligence sufficient to prevent the plaintiff's recovery in this action; and if this proposition be correct, the Court should have put upon the boy the burden of proof to show that he was injured at a crossing—and there being no evidence produced to show that the injury occurred at a crossing the Court should have directed a verdict for the defendant.

The second prayer went further than the first, and asked the Court to say that the very fact of the boy attempting to pass through the train at all while it was in the act of being made up, constituted negligence in law.

The fourth prayer of the defendant should have been granted; it did not necessarily take the case from the jury; it stated certain facts connected with the happening of the accident as testified to by the witnesses of the defendant, and

asked the Court to instruct the jury, that if they believed such facts, they would constitute negligence in law.

The fifth prayer of the defendant asked the Court to instruct the jury, that if it were complying with all the provisions of law by leaving free crossings, while engaged in the lawful business of making up its trains, it was then using such ordinary care and diligence in conducting its business as the law required, and if the *cestui qui use* was negligent in availing himself of the protection the law provided for him in not using a crossing, his negligence was the cause of the accident and the plaintiff could not recover.

The sixth prayer of the defendant asked the Court to construe as a matter of law the meaning of the words " *actual service*" used in the Baltimore City Code, page 571. What does " actual service" mean? These cars were being brought together for the purpose of forming a train, and, as soon as a sufficient number were brought up, they would be coupled together and started off for their destination. They were only placed temporarily on the street; left standing there, not to be loaded or unloaded, but alongside of the depot, waiting only until a sufficient number could be brought up to be sent away. Was it not the province of the Court to construe the language of the Ordinance and declare the meaning of the words " actual service?" If so, and if by rejecting the prayer the Court decided the cars were not in actual service, it erred in its ruling.

The following authorities were relied on :

*Balt. & Ohio R. R. Co. vs. State, use of Miller,* 29 *Md.,* 262; *Balt. & Ohio R. R. Co. vs. Shipley,* 31 *Md.,* 368; *Northern Central R. R. Co. vs. State, use of Geis,* 31 *Md.,* 357; *Baltimore City Passenger Railway vs. Wilkinson,* 30 *Md.,* 225.

*Robert F. Brent* and *Robert J. Brent,* for Fitzpatrick,

Relied on the following authorities in support of the plaintiff's first prayer: 22 *Verm.,* 224; 19 *Conn.,* 566; 30 *Md.,*

47; 9 *Allen*, 557, 559; 8 *C. Bench*, 115; *Redfield on Railways*, 337; *King vs. Walker*, 1 *C. & P.*, 320; 24 *Penn.*, 465; 8 *Barb.*, 68; 25 *Md.*, 387, 388; 24 *Md.*, 121; 29 *Md.*, 259; 29 *Md.*, 435.

The second prayer of the plaintiff was warranted by the evidence adduced, which plainly showed that the injury resulted *directly* from the leaving of cars stationary upon the track *for more than one hour* before the injury, with an open space between a line of stationary cars and one which stood apart by itself, with its wheels unsecured as directed by the Ordinance; and this car, *so easily* moved, being *suddenly* and *without warning, forced into the open space* aforesaid, struck the unsuspecting boy and forced him against the extremity of the line of cars, and caused the terrible injuries which he sustained. The injury being palpably the *result in part*, if not in whole, of the flagrant violation of the Ordinance requiring the wheels of every car, while standing by itself for more than *one hour, to be secured* and fastened, the plaintiff had a right to treat the defendant as a trespasser on the street, and to require the *highest possible* care on its part in closing that space. *Miller's Case*, 29 *Md.*, 261; *Brinig's. Case*, 25 *Md.*, 381.

But the plaintiff forbore to press the law to the extent he might have done against the defendant, and only claimed, by his second prayer, to charge the defendant with a *want of ordinary* care in the way in which said cars were forced together, and the space closed, if such want of ordinary care and prudence were found by the jury, which was properly referred to them as matter of fact. *Miller's Case*, 29 *Md.* 262.

The second prayer of the plaintiff was correct, therefore, in saying that he could recover if the jury found that he was injured by the want of ordinary care on the part of the defendant, which directly caused the injury, provided the plaintiff did not contribute to his injury by any want of ordinary care on his part.

The first prayer of the defendant was correctly refused, because it sought to bar a recovery upon the isolated facts that the injury was sustained while attempting to pass between the cars, while the train was being made up, as testified to, and that the attempt to pass was made at a place which was not a regular crossing; and it peremptorily required the Court to instruct, that these facts, if believed, were in judgment of law a *want* of ordinary care on the part of the plaintiff.

The prayer sought to withdraw from the jury the decision of what was negligence in the plaintiff under all the circumstances, and was therefore properly rejected. *Miller's Case,* 29 *Md.,* 262; *Shipley's Case,* 31 *Md.,* 368.

The second prayer of the defendant is liable to the same objections urged against the first—with the additional objection that it assumes to withdraw from the jury the consideration of what is a want of ordinary care, and what is proximate cause.

The fourth prayer of the defendant only varies its general proposition by instructing the jury that, if openings were left between the cars at the regular crossings of the street, and the cars were being made up as stated, and the plaintiff was injured by attempting to pass between them at a place which was not a regular crossing, then such attempt was a want of ordinary care on his part.

This prayer was vicious,

1st. Because it assumed that no man has a right to pass between cars standing apart from each other on a public street unless at a regular crossing.

2d. Because it ignored all questions of negligence on the part of the defendant.

3d. Because it assumed, as a matter of law, that an *incautious* or imprudent act of the plaintiff in going on the Company's road between its stationary cars, standing apart from each other, was the proximate cause of his injury.

4th. Because it usurped the prerogatives of the jury, and concluded them from deciding who was in fault in the direct injury sustained by the plaintiff.

The defendant's fifth prayer was equally obnoxious to the objections urged to the proceeding prayers. It sought to establish by judgment of law, that if, as testified to by the witness, Righter, the cars were being placed in position between 4 and 9 o'clock P. M., for the purpose of being drawn away, and the plaintiff was caught between two of them, then the cars were in *actual service* within the meaning of the Ordinance, and were not obliged to be fastened together as provided in the Ordinance at page 571 of Baltimore City Code, 1869, although said cars may have stood without being fastened for more than an hour, neither was the company bound to leave the openings in the train, provided for in the same Ordinance, page 573.

This prayer was vicious in that it assumed that " *actual service* " meant *constructive service*, and that cars were in *actual* service when they had stood idle and motionless and empty for a whole afternoon, because they were in a position to be used some hours after — but being while stationary for an hour within the mischief to be remedied, and liable to the dangers to be guarded against, they could not be said to be out of the Ordinance by construction.

ALVEY, J., delivered the opinion of the Court.

This record presents cross-appeals, but we are only required to pass upon the appeal of the plaintiff below in the event of reversal on the exception of the defendant.

The action was brought to recover of the defendant for injuries sustained by the plaintiff, by being caught between two cars of the former, while the latter was attempting to cross Howard street in Baltimore.

At the trial below prayers were offered for the Court's instruction to the jury, on both sides; but of those prayers only the second and third of the plaintiff, and the third and

seventh of the defendant, were granted. The first of the plaintiff, and first, second, fourth, fifth and sixth of the defendant, were rejected; and it was to the refusal of the defendant's five prayers, and to the granting of the second and third prayers of the plaintiff, that the defendant excepted.

On the question of negligence, the main question in the cause, the second prayer of the plaintiff, and the third prayer of the defendant, taken together, would seem to have fully and quite correctly instructed the jury as to the law by which their verdict should be found. To justify a finding for the plaintiff, under the instruction, the jury were required to find the want of ordinary care and prudence on the part of the defendant, in the use and management of its cars, and that such want of ordinary care and prudence directly caused the injury complained of; but that the plaintiff could not recover, if, by the exercise of ordinary care and caution on his part, he could have avoided the accident. This instruction was clear and distinct, and was in accordance with the well settled principles applicable to cases like the present. The jury found the conditions required to entitle the plaintiff to a verdict; but whether properly or not, on the evidence before them, is not a question for this Court to decide. That was a question which could only be determined by the Court below, on a motion for a new trial.

The third prayer of the plaintiff, which instructed the jury as to the proper elements in reference to which the damages should be assessed, in the event of their finding for the plaintiff, was clearly correct. Indeed, we do not understand that it was at all controverted by the defendant. The prayer itself is marked as conceded.

By the first, second, and fourth prayers of the defendant, which were rejected, the question as to what constituted contributory negligence, or want of ordinary care on the part of the plaintiff, was sought to be made one of law for the Court to decide, rather than one of fact for the jury to determine, under all the facts and circumstances of the case. Each of

these prayers, upon certain enumerated facts, required the Court to instruct the jury, that, as matter of law, there was want of ordinary care by the plaintiff, and therefore he was not entitled to recover. In refusing to grant these prayers, or either of them, the Court committed no error.

This Court has too often decided to be required again to repeat, that the question of negligence or the want of ordinary care, in cases like the present, is one of fact for the consideration of the jury. The most that the Court can do, in cases where there is a contrariety of evidence, and the question of care or negligence depends upon the consideration of a variety of circumstances, is to define the degree of care and caution exacted of the parties, and leave to the practical judgment and discretion of the jury, the work of comparing the acts and conduct of the parties concerned with what would be the natural and ordinary course of prudent and discreet men under similar circumstances. To attempt to do more than this, in the great majority of cases that occur, would require of the Court to multiply distinctions, and to indulge refinements, to suit the particular circumstances of each case, to an extent that would tend rather to embarrass than promote the fair and liberal administration of justice.

In this case, as in other cases of the like character, the degree of care required of the plaintiff to entitle him to recover, was simply such as should have been reasonably expected from an ordinarily prudent person in his situation; that is to say, reasonable care. If he exercised such degree of care, though he may have been guilty of some negligence or want of caution, he was still entitled to recover for any injury sustained in consequence of the defendant's negligence. If the defendant did not exercise ordinary care, and the plaintiff, by the exercise of such degree of care on his part, could not have avoided the consequence of the defendant's negligence, he was entitled to recover; and the whole question was, whether the danger in crossing the street between the two apparently stationary cars was so obvious that a person of

common or ordinary prudence would not have made the attempt. This depended upon a consideration of all the facts and circumstances attending the accident, and was essentially a question of fact for the jury. What will amount to ordinary care or the absence of it, in any given case, must always be determined by the standard of common prudence and experience, in view of the special circumstances. What may be ordinary care with reference to one particular state of circumstances, may fall very far short of it with reference to another. Hence a jury, if intelligent, and experienced, forming their conclusions from their knowledge of the usual and ordinary conduct of their fellow-men, are the best judges of such a question. And such questions have, both in this country and in England, been generally referred to the jury, as matters of fact; and the decisions of this Court have been uniform upon the subject.

Whether the defendant was using ordinary care at the time of the accident, was equally a question of fact as that involved in the first, second and fourth prayers of the defendant, and hence its fifth prayer, which sought to make the question of the defendant's use of ordinary care one of law exclusively for the Court, was properly rejected. To say, that because the defendant, in making up its train of cars on the street, had left openings at the regular crossings, and as the accident did not occur at a regular crossing, therefore, as a legal conclusion, the defendant was using ordinary care, is a proposition that cannot be for a moment sustained. Apart from the error of attempting to make the question of ordinary care one of law instead of fact, this prayer utterly ignored all the circumstances tending to prove negligence on the part of the defendant, and would have precluded the plaintiff's right of recovery, though the grossest negligence might have occurred in producing the injury, provided it was at another place than a regular crossing of the street. This prayer, therefore, was objectionable upon more grounds than one.

From what we have said, however, as to the nature of the questions raised by the rejected prayers of the defendant, we do not desire it to be understood, that, in our opinion, there are no cases where the question of negligence could be properly one of law for the Court. Far from it. Many such could be suggested, though they are not of frequent occurrence; but such cases always present some prominent and decisive act, in regard to the effect and character of which no room is left for ordinary minds to differ. Where such is the case, and the act in question is not dependent upon surrounding circumstances for its quality, the Court should not hesitate to characterize it according to its true nature, and allow at once the legal consequences to follow. But this cannot be done where the nature and quality of the act can only be correctly determined by considering all the attending circumstances of the transaction, as in this case.

The defendant's sixth prayer, which related to the construction of the City Ordinance, we think was also properly rejected. It was utterly impossible for the Court to say, that, though the cars were being placed in procession in the street, between the hours of 5 and 9 o'clock P. M., with the purpose of being drawn away to their regular place of destination, they were therefore in *actual service*, within the meaning of the Ordinance, and were not required to be fastened as cars are required to be when left standing in the street for a period of more than an hour. Mere constructive service is clearly not within the meaning and object of the Ordinance. The Ordinance had for its object the prevention of danger to persons having occasion to use the street while cars were allowed to stand in it. This object would be in a great measure defeated, if the construction contended for by the defendant were to prevail. The Ordinance requires no artificial construction to arrive at its meaning. Whether the cars were in *actual* service could only be determined by observation, as matter of fact. It was, therefore, a question for the jury,

whether the cars were in actual service at the time of the accident.

Discovering no error in any of the rulings of the Court below, embraced by the exception of the defendant, and the plaintiff having directed the dismissal of his appeal, we shall affirm the judgment below on the defendant's appeal.

*Judgment affirmed.*

(Decided 12th January, 1872.)