THE BALTIMORE AND OHIO RAILROAD COMPANY
vs. THE STATE OF MARYLAND, use of HANNAH
DOUGHERTY, and others.

*Action for Damages—Ordinary Care and Prudence—*
*Proximate Cause—Want of due Care and Caution.*

Where a person walking on a railroad track is run over and killed by an
engine belonging to the railroad company, the company is responsible
in damages for such killing, though the deceased was guilty of a want
of ordinary care and prudence in so walking on the track, provided it
appear that the accident would not have occurred if the agents of the
railroad company had used in running the engine which occasioned
the killing, ordinary prudence and care in giving reasonable and usual
signals of its approach, and in keeping a reasonable look-out.

In considering the question of ordinary care and prudence on the part of
a person killed by being run over on a railroad track, the jury have a
right to take into consideration, together with the other facts of the
case, the known and ordinary disposition of men to guard themselves
against danger.

Where a person walking on a railroad track is run over by an engine
belonging to the railroad company and operated by its agents, and in
consequence of the injury thus received, dies shortly afterward, an
action for damages for the use of his widow and children, is main-
tainable against the railroad company, if it appear that there was neg-
ligence on the part of its agents, which was the proximate and imme-
diate cause of the injury, notwithstanding the deceased may have been
guilty of a want of ordinary care and prudence, tending in a remote
degree to cause the injury which resulted in his death.

A person walking on a railroad track, away from any public crossing,
was told by his companion, who heard the noise, that an engine was
coming, and he replied, "I seen a train running up and down the other
track this evening," and was immediately run over by the approaching
engine, and died in consequence of the injury which he received. In
an action against the railroad company by the State, in behalf of the
widow and children of the deceased, it was HELD:

That if the deceased at the time he received the warning from his com-
panion, could have left the railroad track, and under all the circum-
stances and surroundings of his situation had sufficient time to do so,
and would by doing so have escaped injury, then his remaining upon

the track of the railroad after such warning, was such a want of due care and caution on his part as to debar the equitable plaintiffs from recovery, though there was negligence on the part of the defendant's agents.

APPEAL from the Circuit Court for Howard County.

This was an action brought against the appellant by the State, for the use of the widow and children of James Dougherty, to recover damages for his death. The deceased, on Sunday night, the 18th of October, 1868, while walking on the track of the Baltimore and Ohio Railroad, at Sykesville, was run over by an engine in the use of the agents of the railroad company, and in consequence of the injuries he then sustained, died on the following Tuesday. At the date of the accident, the county road, which runs between a high bluff on the north, and the railroad on the south, through the village, was covered for several hundred yards with gravel, which the appellant had carted from the Howard county side of Sykesville and dumped in the county road, while engaged in repairing damages to the railroad, caused by a recent flood. At the time of the accident, the deceased, with one John Sullivan, was walking along the north track of the railroad, having a lighted lantern in his hand. When about a hundred yards from where the county road crossed the railroad, Sullivan heard the noise of an engine and remarked a train was coming; the deceased replied, "I seen a train running up and down the other track this evening." Sullivan stepped off the track and the engine shot by. The head light of the engine was not lighted. After the engine passed, Sullivan turned and saw the deceased lying on the pile of gravel on the side of the county road, his feet down on the rails. The engine was one which the appellant's agents had been using with the ballast train at Sykesville. On the evening of the accident a watchman in the employ of the appellant, finding the engine required water, with the fireman, the engineer being absent, got

on the engine and backed it eastwardly to the main track, and then back to the water station; then started it along the north track of the main line, to run it up and down that track, for the purpose of pumping water into the boiler. While thus running, between eight and ten miles an hour, the engine struck the deceased. The appellant offered evidence to show that on the day of the accident the county road was in a passible condition.

*Exception:* The plaintiff offered the four following prayers:

1st. If the jury shall find from the evidence in the case that Dougherty was killed by the engine of the defendant whilst being driven by its agents, and that the said killing was occasioned by the want of ordinary care on the part of the said agents, then the plaintiff is entitled to recover, unless the jury shall find that Dougherty contributed to the accident by the want of ordinary care on his part; and in considering the want of ordinary care on his part, the jury are entitled to consider the condition, at the time of the accident, of the county road alongside of the railroad, and whether, under all the evidence in the case, it was a want of ordinary care in him to have been on the track of the railroad at the time of the accident.

2d. Even though the jury believe that James Dougherty was guilty of a want of ordinary care and prudence in walking on the track of the defendant, under the circumstances testified to before them; yet, if they further find, that if the agents of the defendant had used, in and about the running of the train which injured him, ordinary prudence and care, in giving reasonable and usual signals of its approach, and in keeping a reasonable lookout, that said accident would not have occurred, then the plaintiff is entitled to recover; provided they find the other facts set out in the first instruction of the plaintiff.

3d. That in considering the question of ordinary care and prudence on the part of the deceased, James Dougherty, the jury have a right to take into consideration, together with the

other facts of the case, the known and ordinary disposition of men to guard themselves against danger.

4th. Even if the jury shall find that the deceased, James Dougherty, was guilty of a want of ordinary care and prudence, tending, in a remote degree, to cause the injury which resulted in his death; yet, if they shall further find that there was negligence on the part of the defendant's agents, which was the proximate and immediate cause of the injury which caused the death of James Dougherty, the action is maintainable notwithstanding the deceased may not have been entirely without fault in the first instance.

And the defendant offered seven prayers, as follows:

1st. That the burden of proof is upon the plaintiff to show that the accident complained of was altogether owing to the negligence or want of care and skill on the part of the defendant or its agents; and if the jury shall find from the evidence in the cause that the accident which caused the death of said Dougherty, was in any degree owing to the want of due care and caution, at the time of accident, on the part of said Dougherty, then the plaintiff is not entitled to recover in this action, and the jury must find a verdict for the defendant.

2d. If the jury shall believe from the evidence that the deceased, Dougherty, was walking upon the track of the defendant's railroad, away from any public crossing, in company with the witness, Sullivan, and that before the happening of the accident complained of, the said Sullivan heard the noise of the engine, and told Dougherty that it was coming, and that Dougherty answered, "I seen a train running up and down the other track this evening," and remained upon the track *when Sullivan stepped off the track and escaped from all injury*; and if the jury shall further believe from the evidence that said deceased, at the time of such warning from his companion, might also have stepped off the track, and would so have escaped injury, then his remaining upon the track, after such warning, was such a want of due care and

caution on his part as to debar the equitable plaintiffs in this case from recovery, even if the jury shall further find that there was negligence on the part of the defendant's agents.

3d. Though the jury may believe there was carelessness on the part of the defendant, yet, if there was at the same time such carelessness on the part of the decedent as proximately caused the accident, then the plaintiff is not entitled to recover, and the failure of the decedent to get off the track after notice was brought to him by the warning of the witness Sullivan, was such negligence as proximately caused the injury.

4th. If the jury believe that the decedent was on the defendant's road, not at a public crossing, and that he was not there by any necessity put upon him by the defendant's act, in the alleged obstruction of the county road, then his being there is conclusive evidence of contributory negligence on his part, and the equitable plaintiffs cannot recover in this action.

5th. If the jury shall believe from the evidence, that at the time of the happening of the accident, the county road, running alongside of the railroad track, was in such a condition that the man Dougherty could have passed along it without any danger to himself, and that if he had used said road instead of walking down the track, the accident would not have happened, then the fact of his walking on said track was the proximate cause of the accident, and the plaintiff cannot recover.

6th. That should the jury find for the plaintiff, the amount of damages must be limited to the actual pecuniary loss which the equtable plaintiffs have sustained by the accident.

7th. If, under the instructions of the Court, the jury should find for the plaintiff, then, in assessing the damages, they are to estimate the reasonable probabilities of the life of the deceased, Dougherty, and give the equitable plaintiffs such pecuniary damages, not only for past losses, but for such

prospective damages as the jury may find that they have suffered, or will suffer, as the direct consequences of the death of the said Dougherty; that for his children these prospective damages may be estimated to their majority, and as to the widow to such probability of life as the jury may find reasonable under the circumstances.

The first prayer of the plaintiff was conceded by the defendant, and the first and seventh prayers of the defendant were conceded by the plaintiff.

The Court (HAYDEN and HAMMOND, J.) then granted the second, third and fourth prayers of the plaintiff, and rejected the second, third, fourth, fifth and sixth prayers of the defendant, and gave the following instructions to the jury, in lieu of the defendant's second prayer:

If the jury shall believe from the evidence that the deceased, Dougherty, was walking on the track of the defendant's railroad, away from any public crossing, in company with the witness, Sullivan, and that before the happening of the accident complained of, the said Sullivan heard the noise of the engine and told Dougherty that it was coming, and that Dougherty answered, " I seen a train running up and down the other track this evening;" and if the jury shall further believe from the evidence, that said deceased, at the time of such warning from his companion, could have left the track of said railroad, and under all the circumstances and surroundings of his situation, as shown by the evidence, he had sufficient time to do so, and that he would, by so doing, have escaped injury, then his remaining upon the track of the railroad, after such warning, was such a want of due care and caution on his part as to debar the equitable plaintiffs in this case from recovery, even if the jury shall further find that there was negligence on the part of the defendant's agents.

The defendant objected to the granting of the plaintiff's prayers and to the rejection of its own, and to the instruction given by the Court. The jury gave a verdict for the plaintiffs and assessed the damages at $6,000, which were appor-

tioned among the widow and the six children of the deceased. Judgment on verdict.    The defendant appealed.

The cause was argued before BARTOL C. J., BRENT, BOWIE, GRASON and ROBINSON J.

*Ferdinand C. Latrobe* and *Thomas Donaldson*, for the appellant.

While the Court of Appeals of Maryland has said, that, in most cases, the question of negligence is for the jury to decide and not for the Court,—yet the Court has also said, that there are cases where the acts of the injured party are so glaringly careless and negligent, that the Court will declare them to constitute negligence in law.    *B. & O. R. R. Co. vs. State, use of Miller*, 29 *Md.*, 262 ; *B. & O. R. R. Co. vs. Shipley*, 31 *Md.*, 368 ; *Northern Central R. R. Co. vs. State, use of Geis*, 31 *Md.*, 358 ; *Baltimore City Passenger Railway Co. vs. Wilkinson*, 30 *Md.*, 225 ; *B. & O. R. R. Co. vs. Fitzpatrick*, 35 *Md.*, 32.

The tendency of juries to be governed by feelings of sympathy in favor of plaintiffs, naturally causes them to ignore carelessness or negligence on the part of a decedent, whereby the accident was the proximate result, especially when a widow and children are upon one side, and a powerful corporation on the other.

Thus, such a defendant is compelled to seek protection for its rights in an appeal to the Court to say, that some glaring act of carelessness on the part of an injured party *proximately* caused the accident, and constitutes negligence in law, notwithstanding that, at the same time, the defendant may have been guilty of a want of ordinary care.

When a traveller approaches a railroad track, or is walking thereon, he is bound to use his eyes and ears, so far as there is an opportunity.    Negligence in the railroad company, in the giving of signals, or in omitting precautions of any kind, should not excuse *his* omission to be diligent, in

such use of his own means of avoiding danger. The track of a railroad, upon which trains are liable to run at any moment, is certainly a place of danger,—it should not be used as a foot-path, save at an actual crossing, and then with caution, by any careful person, where there is no actual necessity for his so doing, merely to gratify his own convenience, and if so used, without such caution, it certainly exhibits a decided want of ordinary care.

In Europe, so dangerous are railroad tracks considered, that persons or vehicles are not allowed to use them even at public crossings, the road or foot-path invariably being required to pass over or under the track of the railroad.

This theory of the law in regard to these cases of negligence is certainly sustained by the decisions of many tribunals. *Haslan, et al. vs. Morris & Essex R. R. Co.,* 33 *New Jersey L. R.,* 147; *Langhoff vs. Milwaukee & Prairie du Chien R. Co.,* 23 *Wis.* 44; *New Jersey Exp. Co. vs. Nichols,* 33 *New Jersey L. R.,* 434.

Nor is it altogether inconsistent with the opinion of this Court in the case of the *Baltimore & Ohio Railroad Company vs. State, use of Trainor, et al.,* 33 *Md.,* 554.

Although the Court has said in Trainor's case, that even if a person goes on the track, *imprudently and incautiously* and is killed, the railroad company is responsible, unless it has used reasonable care and caution to avert it, thus *apparently* denying that such *imprudent and incautious* going upon the track, should he be killed, would not be such want of ordinary care as would constitute the *proximate* cause of his death, should the company not use reasonable care. Yet the Court has qualified its ruling, by saying, " Provided that being on the track he did nothing positive or negative to contribute to the immediate injury."

The failure of Dougherty to get off the railroad track when told by the witness, Sullivan, that a train was approaching, and that he made no effort to do so, is shown *positively* by his answer to Sullivan's warning, " I seen a train running up and

down the other track this evening," indicating that he relied upon his own judgment of what he had seen early in the evening, and took upon himself the risk of remaining upon the track, instead of following the example of Sullivan who got out of the way of danger, was not only a want of ordinary care, but a *positive* contribution to his injury and the proximate cause thereof.

For these reasons the rejection of the defendant's second and third prayers was erroneous.

If the jury believed there was no necessity for the decedent being upon the railroad track, that he could have walked upon the county road without any danger to himself, that he merely consulted his convenience in walking upon the railroad track, then he was on the track *imprudently* and *incautiously*, that his being there was not in accordance with "the known and ordinary disposition of men to guard themselves against danger," and that this was one of those cases where the acts of the decedent were so careless and negligent that the Court should declare them to be negligence in law.

For these reasons the rejection of the defendant's fourth and fifth prayers was erroneous.

The sixth prayer of the defendant was wrongfully rejected, for the reason that it was only the actual pecuniary loss resulting from the death of Dougherty, that the equitable plaintiffs could recover, and the defendant was entitled to such an explicit declaration by the Court. The seventh prayer of the defendant *apparently* limits the plaintiff to the recovery of actual damages only, yet there was no reason why the sixth prayer should not have been granted in connection with the seventh, and its rejection was calculated to injure the defendant by denying to it the explicit declaration by the Court, that only *actual* damages could be recovered.

If the second prayer of the defendant was law, as believed to be, the Court erred in rejecting it, and substituting for it the instruction which it gave. If the principle of law embraced in the second prayer was sound, any modification

thereof was unnecessary, and was only calculated to injure the defendant by misleading the jury. *Ginsberg & Oppenheim vs. Pohl.*, 35 *Md.*, 505.

*Henry V. D. Johns* and *Wm. M. Merrick*, for the appellees.

The cases of *Price against the Northern Central Railway Company*, and many others in this Court, and especially the case of the *Baltimore and Ohio Railroad Company against Trainor*, 33 *Md.*, 542, from which the prayers of the plaintiff below are taken almost *verbatim*, are decisive of the present appeal. Every fact was left to the jury for them to determine whether there was any contributory negligence on the part of the deceased, and whether the exercise of ordinary care on the part of the defendant would have prevented the accident.

This is especially exemplified in the attempt of the defendant, so to shape his second instruction, as to make the question of negligence a question of law for the Court, and by the Court's substituted instruction therefor, which put all the facts and circumstances surrounding the situation of the party deceased, to the jury, for them to draw therefrom the conclusion, as matter of fact, whether there was or was not contributory negligence in the deceased.

The sixth prayer of the defendant, which was rejected, limited the damages to the past, and excluded from view the prospective pecuniary damage of the equitable plaintiffs. It was properly rejected for that reason, and the rule of damages as laid down in the very words of Trainor's case, was prescribed instead thereof.

BOWIE, J., delivered the opinion of the Court.

After obtaining from the Court in their first prayer (which was conceded) the declaration of the general rule, that to enable the appellees to recover, the burden of proof was on them to show that the accident complained of was *altogether* owing to the negligence, or want of care and skill on the part of the

appellant or its agents; and if the jury should find from the evidence that the accident which caused the death of Dougherty was *in any degree* owing to the want of due care and caution, at the time of the accident, on the part of Dougherty, the appellee was not entitled to recover.   The appellant, by its second, third, fourth and fifth prayers, sought to obtain from the Court instructions to the jury, that certain conduct and acts of the deceased of omission and commission, particularly set forth in the prayers, constituted such "a want of due care and caution" on his part, as to debar the equitable plaintiffs from recovery," or "was such negligence as proximately caused the injury," or "is conclusive evidence of contributory negligence on his part," or "was the proximate cause of the accident, and the plaintiff cannot recover."

The appellant's theory is, that although according to the previous decisions of this Court in similar cases, it has been held that generally it was the province of the jury, and not of the Court, to decide what constitutes negligence, or want of due care and diligence; yet the Court had said there are cases where the acts of the injured party are so glaringly careless and negligent, that the Court will declare them to constitute negligence in law.

It is submitted that this is one of the exceptional cases in which the appellant was entitled to the interposition of the Court, to restrain the tendency of juries to ignore the carelessness of the decedent, through their sympathy with the loss of the bereaved, by defining clearly what acts amounted to negligence; what the proximate cause of the injury, and what contributory negligence.

In the case of the *Northern Central R. R. Co. vs. The State, use of Price, et al.,* 29 *Md.,* 420, a case of peculiar interest, both from the character of the catastrophe and the learning and ability displayed in its argument, it was objected that " the appellee's first and second prayers were both erroneous in the manner in which each submitted the question of *gross negligence* to the jury."

Commenting on which this Court said: "The next proposition is whether the question of negligence was properly referred to the jury by the plaintiff's prayers. And this, we think, cannot now be regarded as an open question in our Courts in the trial of causes like the present. *Worthington vs. Baltimore and Ohio R. R. Co.*, 21 *Md.*, 275; *Merchants' Bank vs. Bank of Commerce*, 24 *Md.*, 53. Negligence, in a case like this, is not so much a question of law as it is a question of fact, depending for its determination upon a consideration of all the attending facts and circumstances, in connection with the ordinary habits, conduct and motives of men. For the trial and determination of such a question, a jury of experienced and intelligent men are peculiarly adapted."

" It is very true, negligence may, in many cases, become a mere question of law, to be determined by the Court upon a given state of facts, either admitted or to be found by the jury."

" It is not however the duty of the Court to draw inferences and make deductions from evidence. To do that falls within the well defined province of the jury, that Courts should ever be careful not to invade."

" Where the facts attending the transaction are at all complex or unusual in their character, the existence of negligence must be deduced as an inference from all the facts and circumstances disclosed, after tracing their relation to the matter in issue and considering their force and effect." *Beers vs. Housatonic Railroad Co.*, 19 *Conn.*, 569.

The case in which these views were expressed had many features in common with that before us. The accident occured at night, the scene was the vicinity of a village or hamlet, at the intersection of the highway, with the railroad, and the negligence (if any) consisted in the decedent's being on the track of the railroad, whether he was properly or improperly there, depended on many collateral circumstances, from which inferences must have been deduced, to arrive at

the correct conclusion, which it was held was the province of the jury, and not of the Court, to draw.

The case of the *Baltimore City Passenger Railway vs. Wilkinson*, 30 *Md.*, 226, presents an example of those cases in which negligence is a question of law for the Court. In that case it was shown that one of the regulations of the City Passenger Railway prohibited persons from getting on or off at the front end of the car, and required all persons to enter and descend by the rear platform. The plaintiff was proved to have had notice, and in violation of the regulation got on the front of the car, in getting off of which he was injured.

This Court, on the question whether the appellant's sixth prayer, which declared "if the plaintiff knowingly violated said regulation, it was conclusive evidence of negligence on his part, and if he were injured in consequence thereof he was not entitled to recover," should be granted, held that "In such case the question of negligence, on the part of the passenger, is a legal question for the Court to decide, and the defendant below was entitled to ask an instruction to the jury exempting it from liability upon their finding the facts in the third and sixth prayers. Unlike the case where the facts from which negligence is to be inferred, are controverted, or are numerous and complicated, and when no certain legal rule or standard can be laid down, and in which the question of negligence is necessarily one to be submitted to the jury." *Balto. City Pas. Railway Co. vs. Wilkinson*, 30 *Md.*, 232, 233.

In the case of the *Balto. and Ohio R. R. Co. vs. The State, use of Miller*, 29 *Md.*, 252–263, it is laid down generally that what constitutes negligence on the part of the deceased to bar a recovery, or what facts constituted due diligence, on the part of the defendant, to exempt it from liability, were questions for the jury, and the Court were right in rejecting prayers which proposed to instruct the jury as to those points. 29 *Md.*, 263.

No question was raised in the case of the *Northern Central R. Co. vs. The State, use of Geis, et al.*, 31 *Md.*, 358, as to the

respective province of the Court and jury, in deciding what constituted negligence on the one part, or due diligence and care on the other. But in the case of the *Balto. and Ohio R. R. Co. vs. Shipley,* 31 *Md.,* 369, the same propositions were announced as in the case of the *North. Cen. R. R. Co. vs. The State, use of Price,* 29 *Md.,* 421.

After stating the general rule, "that negligence is a question for the jury to decide upon all the facts and circumstances of each case," the Court said, " But while this is the general rule, cases may and do sometimes occur, where the Court is required to declare some glaring act of carelessness on the plaintiff's part to be, in law, such contributing negligence as will prevent are covery, or, on the other hand, where the proof of negligence on the part of the defendant is so slight and inconclusive in its nature, as to demand from the Court an instruction as to its legal insufficiency to prove negligence, in order to prevent the jury from indulging in wild speculation or irrational conjecture."

The circumstances of that case were not, however, thought such as to warrant the interposition of the Court. After reviewing the evidence, this Court was of opinion that the Court below properly refused to instruct the jury on the question of contributing negligence, as required in the appellant's prayers.

In *Trainor's case,* 33 *Md.,* 542, the relative duties of the Court and jury in this respect were not adverted to.

In the very recent case of *Fitzpatrick vs. The Baltimore and Ohio R R. Co.,* 35 *Md.,* 32, the defendant sought, by its first, second, fourth and fifth prayers, to obtain from the Court instructions that if the jury found the accident did not occur at a regular crossing of the street where openings had been left by the defendant for passengers, but occurred at other openings left in the train of cars, in consequence of the plaintiff's attempt to pass between them whilst they were being prepared for service, such attempt of the plaintiff was a want of ordinary care on his part, and being the proximate cause of the injury, the plaintiff could not recover.

These instructions were refused by the Court below, and upon appeal their rejection was affirmed by this Court in very emphatic language.

Referring to these prayers, it was said: "This Court has too often decided, to be required again to repeat, that the question of negligence, or the want of ordinary care, in cases like the present, is one of fact for the consideration of the jury. The most the Court can do, in cases where there is a contrariety of evidence, and the question of care or negligence depends upon the consideration of a variety of circumstances, is to define the degree of care and caution exacted of the parties, and leave to the practical judgment and discretion of the jury, the work of comparing the acts and conduct of the parties concerned, with what would be the natural and ordinary course of prudent and discreet men under similar circumstances."

"To attempt to do more than this, in the great majority of cases that occur, would require of the Court to multiply distinctions and to indulge refinement to suit the particular circumstances of each case to an extent that would tend rather to embarrass than promote the fair and liberal administration of justice." They reiterate the dogma, "What will amount to ordinary care, or the absence of it in any given case, must always be determined by the standard of common prudence and experience in view of the special circumstances." * * * "And such questions have, both in this country and in England, been generally referred to the jury as matters of fact; and the decisions of this Court have been uniform upon the subject."

Having laid down these general rules, the Court proceeds to say, they do not mean to say, "there are no cases where the question of negligence could not properly be one of law for the Court; far from it; but such cases always present some prominent and decisive act in regard to the effect and character of which no room is left for ordinary minds to differ. Where such is the case, and the act in question is not de-

pendent upon surrounding circumstances for its quality, the Court should not hesitate to characterize it according to its true nature, and allow at once the legal consequences to follow. But this cannot be done where the nature and quality of the act can only be correctly determined by considering all the circumstances as in this case."

We have examined the cases in *New Jersey L. Rep.* and *Wisconsin,* referred to in the appellant's brief; in two of these, the question was presented on a motion for a new trial, in which the Court was exercising its legitimate function of reviewing the action of the jury upon the evidence offered, and might very properly set aside a verdict if in their opinion the jury reached improper conclusions; an exercise of discretionary power in this respect, is very different from withdrawing the consideration of the facts entirely from them, and deciding their effect as a question of law.

In the case of the *New Jersey Express Co. vs. Nichols,* 33 *N. J. L. Rep.,* 434, although it was held, as with us, that if the plaintiff was negligent, and his negligence contributed to his own injury in such a manner that if he had not been negligent he would not have been injured, he could not recover, yet it does not appear that any question was raised, as to the point whether it was the province of the Court or jury to decide the question of negligence.

After carefully comparing the main facts of the case now before us, with those of the preceding cases cited, which are at all similar, we cannot discover any such distinct prominent fact, about which ordinary minds would not differ, which distinguishes the present from those cited, so as to justify the Court below, to pronounce the conduct of the deceased such negligence in law as would, if found by the jury, preclude the plaintiff from recovery. The facts from which negligence was to be inferred were complex and controverted, subject to various constructions as viewed from different stand points, and governed by no fixed legal rules upon which the Court could assume to determine, without, in our

judgment, departing from a series of well considered deci-
sions, and violating the cardinal legal maxim "*ad questiones
facti respondeant juratores.*"

Finding no error in the rulings of the Court below the
judgment will be affirmed.

*Judgment affirmed.*

(Decided 20th June, 1872.)

BARTOL, C. J., and ROBINSON, J.

It appears from the evidence that James Dougherty was
walking at night on the railroad track of the appellant, and
was killed by a locomotive. The night was dark, and the
place where the accident happened was not at a public cross-
ing of the railroad.

By the side of the track, and parallel with it, there was a
county road, which had been obstructed by sand and gravel
placed there by the employees of the railroad company in
making repairs.

There is a conflict in the testimony as to the actual condi-
tion of the county road at the time of the accident. Some of
the witnesses testified that the obstructions remained, and
that the county road was not safe, or fit to be travelled; while
others testified that the obstructions had been removed, and
the road left in a passable condition.

In this state of the proof, the appellant asked the instruc-
tion contained in its *fifth* prayer, which we think ought to
have been granted. The facts stated in this prayer, if found
by the jury, would, in our opinion, constitute such negligence
on the part of the deceased, directly contributing to the acci-
dent, as to deprive the appellees of the right to recover.

In *Balt. and Ohio R. R. Co. vs. Shipley*, 31 *Md.*, 370, this
Court, after stating that in most cases " the rule is that negli-
gence is a question for the jury to decide, upon all the facts
and circumstances of each case," said : " But while this is the
general rule, cases may and do sometimes occur, where the
Court is required to declare some glaring act of carelessness

on the plaintiff's part to be, in law, such contributing negligence as will prevent a recovery." * * * * *

And in *Balto. and Ohio R. R. Co. vs. Fitzpatrick*, 35 *Md.*, 46, this Court said: "We do not desire it to be understood that, in our opinion, there are no cases where the question of negligence could be properly one for the Court; far from it. Many such could be suggested, though they are not of frequent occurrence; but such cases always present some prominent and decisive act, in regard to the effect and character of which no room is left for ordinary minds to differ. Where such is the case, and the act in question is not dependent upon surrounding circumstances for its quality, the Court should not hesitate to characterize it according to its true nature, and allow at once the legal consequences to follow."

Such, in our opinion, is the case presented by the *fifth* prayer of the appellant, and we think there was error in refusing it.