(Decided 19th December, 1872.)

THE CUMBERLAND AND PENNSYLVANIA RAILROAD COMPANY *vs.* THE STATE OF MARYLAND, use of MARY FAZENBAKER, and others.

*Negligence, or the want of reasonable Skill and Care, a question for the Jury—Province of the Court and Jury.*

In an action against a railroad company, in the name of the State, for the use of the widow and infant children of an employé of the company, to recover damages for his death by the explosion of one of its locomotives, it was HELD:

That what constituted negligence, or ordinary care, or the want of it, in the deceased, contributing to his death; and the reasonable skill, care and diligence exercised on the part of the railroad company, to relieve it from responsibility for the fatal occurrence, were questions, according to the nature of the evidence in the case, to be determined by the jury from all the facts and circumstances.

The Court, upon application, will always instruct the jury as to the degree of diligence, or skill and care, which the law imposes upon the respective parties; and the jury must determine if the requisite conduct has been observed.

APPEAL from the Circuit Court for Allegany County.

This action was brought against the appellant, in the name of the State, for the use of Mary Fazenbaker and her three infant children, to recover damages for the killing of William Fazenbaker, the husband and father of the equitable plaintiffs, on the 26th of March, 1870, by the explosion of one of the company's locomotives. The plea was "not guilty."

The deceased was a brakeman in the service of the appellant, and his place was in the middle of the train when in motion. On the day in question he left his place on the train, and rode for about half a mile on the tool box on the engine, over the boiler. The train then stopped, and after standing still for about five minutes the engine exploded, and he was killed. He had been in the service of the appellant for seventeen years.

Evidence was offered at the trial below on the part of the appellee tending to prove that the engine had been defectively repaired, and that the explosion was the result of such defect—and that in the opinion of the witness, E. L. Cleaveland, the master mechanic, W. L. Jordan, under whose supervision the engine was rebuilt, was not competent for his place, and that the engine as repaired was not safe.

The appellant then offered evidence tending to prove that the engine was of approved construction when originally put upon the road; that it had been thoroughly

and completely repaired a short time before the accident, and that as repaired it was perfectly safe—that the master mechanic was a competent and experienced man, thoroughly fit for his place, and was selected by the president of the company, Mr. Millholland, under whom he had served for eighteen years, as a superior man, and had been six years in the service of the company as master mechanic; and that Joseph McCune, the boiler-maker, Thaddeus Beall, the foreman of the machine shop, and George Wills, engineer of the locomotive which exploded, were each and all competent employés.

*Exception.*—The plaintiff offered two prayers, the first of which as follows, the Court (MOTTER, J.) granted, the other it rejected:

1st. If the jury shall find from the evidence that the defendant owned and worked a railroad leading from Cumberland, Md., to Piedmont, West Va., during the years 1869 and 1870, and that it had and owned, in connection with the working of said road, during that time, a shop or shops located at Mt. Savage, on the line of said road, in which the defendant assumed or undertook to manufacture, reconstruct or rebuild the engines in use upon its said road; that William L. Jordan was, during said time, and still is the master mechanic, superintendent or agent of the defendant, having control and general direction of the employees in said shop or shops; that the engine named "C. E. Detmold," now known as "No. 11," was taken to said shop or shops to be rebuilt or reconstructed, in or about the month of December 1869; that said engine was rebuilt or reconstructed under the direction and supervision of said Jordan; that the said Jordan materially altered, changed or modified the plan and general arrangement of said engine, whereby it was rendered of *unapproved and unsafe construction*; that *said engine, at the time* it came from the shop or shops of the defendant, in and about

the month of February 1870, and at the time it was placed upon the road of the defendant, was not of *approved and safe construction*, but was of unapproved and unsafe construction; that Erastus L. Cleaveland, a skilful and experienced machinist in the employ of the defendant in said shop or shops, if the jury shall so find, warned and notified the said Jordan that the changes, alterations or modifications, in the general plan and arrangement of said engine, which the said Jordan was then making or proposing to make, would render it unsafe, and would cause it to blow up or explode very soon thereafter; that said Jordan persisted in and did have the changes, alterations or modifications proposed by himself made and carried out in the *rebuilding or reconstruction of said engine, that it was because of such changes, alterations or modifications in the plan* and general arrangements of said engine *that it blew up or exploded,* on or about the 26th March 1870, between Mt. Savage and Frostburg, on the line of said road; that by said explosion William Fazenbaker, the husband and father of the equitable plaintiffs in this case, was instantly killed while in the employ of the defendant as a brakeman on the train to which said engine was attached; that said Fazenbaker was not notified of the said changes, alterations or modifications so made in the general plan and arrangement of said engine, nor was aware of the unsafe and unapproved construction, if any, of said engine; that he did not contribute to his own death by the want of ordinary care on his part; that at the time of said explosion he was using ordinary care; that the unsafe and unapproved construction of said engine, if any, was known to or could have been ascertained by reasonable skill, care and diligence on the part of the defendant or its agents before said explosion occurred, then the plaintiffs are entitled to recover, and the jury may award such damages as they may

think, proportioned to the injury resulting from such death, to the widow and minor children respectively of the said deceased, for whose benefit this action is brought.

The defendant, prayed the Court to instruct the jury as follows:

1st. That even if the jury ·shall believe from the evidence, the. injury complained of was caused by a defect in Engine No. 11, and· that such defect was owing to the negligence of the agents of the defendant, still the plaintiff cannot recover unless it shall satisfy the jury, from the evidence in the cause, that the defendant did not use reasonable care in procuring sound machinery and faithful and competent employees, and that the plaintiff has offered no evidence to show that the defendant did not use such reasonable care, and therefore the verdict must be for the defendant.

2d. That even if the jury find from the evidence that the injury to Fazenbaker resulted from a defect in the Engine No. 11, and that such defect existed by reason of the neglect or want of care of other employees of the defendant, whether mechanics to repair and keep in order the machinery, or the master mechanic or inspector of the machinery and rolling stock of the company, or the superintendent of trains on the defendant's road; yet the plaintiff cannot recover, because there is no proof that the defendant did not use reasonable care in procuring said engine or selecting said employees.

3d. That if they find from the evidence in the cause that Engine No. 11 was of approved construction and material when put in use on the defendant's road, and· that the defendant used reasonable care in selecting the co-employees of Fazenbaker, then the plaintiff cannot recover, even though the jury may believe from the evidence that the boiler of said engine was defective at the time the injury happened, and that such defectiveness caused the injury, because there is no proof in the cause

that the defendant had notice of such defectiveness, and failed after such notice to use reasonable diligence to repair the same.

4th. That to enable the plaintiff to recover, it must satisfy the jury, by the evidence, that engine No. 11 was defective and insufficient at the time of the accident, and that such defective condition of the engine, was well known to the defendant, and was the cause of the injury sued for, and that the defendant did not use reasonable care in procuring said engine, or in repairing the same after such knowledge of its defectiveness, or in procuring faithful and competent co-employees of Fazenbaker, whose duty it was to keep said engine in good condition and repair, and that the plaintiff has offered no evidence to show that the defendant did not use reasonable care in procuring said engine and co-employees, or that the defendant knew of such defective condition of said engine, and therefore cannot recover.

5th. That if they find from the evidence in the cause, that Fazenbaker was employed as first brakeman on the train attached to engine No 11, at the time of the accident, and that it was his duty, as such brakeman, to be on the middle of said train, and that some time before the train stopped, he got on the engine and rode half a mile, more or less, upon it until the train stopped, and remained on said engine after the train stopped, and was on it at the time the accident happened, and that but for this conduct on his part, the injury inflicted upon him, and for which the suit is brought, could not have been inflicted upon him, then the plaintiff is not entitled to recover.

6th. That if they find from the evidence that Joseph McCune was boiler maker, and William L. Jordan, master of machinery, Thaddeus Beall, foreman of the machine shop for the defendant, and that George Wills was engineer on engine No. 11, and that the defendant

used reasonable care in selecting said persons as competent employees, as also in procuring said engine No. 11, and that about five weeks before the accident happened, said engine was put in sufficient repair, according to the judgment of said McCune, Jordan, Beall and Wills, and that it was the duty of said Wills to report promptly all defects in said engine, to said McCune and Jordan and Beall, or one of them, and that said Wills did not report any defects between the time the said engine was so repaired and said accident happened, then the plaintiff cannot recover, even though the jury may believe the engine was defective, and that such defectiveness caused the injury sued for, and that the witness, Cleaveland, differed in opinion with said McCune, Jordan and Beall, as to the sufficiency of the repairs made upon said engine.

7th. Even if the jury shall find that Fazenbaker's death was caused by the injuries received by the explosion of the boiler of engine No. 11, they are not at liberty to infer any default or negligence on the part of the defendant merely from the injury done to said Fazenbaker, but they must find from the evidence in the cause that said injury occurred by some fault on the part of the defendant.

The Court granted the defendant's third, sixth and seventh prayers, (which last was conceded by the plaintiff's counsel,) and rejected its first, second, fourth and fifth prayers ; but granted the first after striking out as follows; "And that the plaintiff has offered no evidence to show that the defendant did not use such reasonable care, and therefore the verdict must be for the defendant;" and granted the defendant's fourth prayer after modifying it by striking out: "And that the plaintiff has offered no evidence to show that the defendant did use reasonable care in procuring said engine and co-employees, or that the defendant knew of such defective

condition of said engine, and therefore cannot recover.''
To the ruling of the Court in granting the plaintiff's
first prayer, and rejecting the defendant's first, second,
fourth and fifth prayers, and granting its first and fourth
with the modifications, the defendant excepted.

The verdict was for the plaintiff; and the damages
were assessed at $3,600 ; which after deducting the costs
not recovered from the defendant, was specifically di-
vided among the equitable plaintiffs. The defendant
appealed.

The cause was argued before BARTOL, C. J., STEWART,
BRENT, MILLER and ALVEY, J.

*John P. Poe,* for the appellant.

The appellant's fifth prayer accurately defined the law
applicable to the facts of the case—was unobjectionable
in form, was warranted by the evidence, and should,
therefore, have been granted. The company did not
require the deceased to be where he was at the time of
the explosion which caused his death ; his being there
was not within the line of his duty as brakeman ; by
being there he exposed himself to a danger which was
not one of the risks to which the terms of his employ-
ment subjected him, and in so exposing himself volun-
tarily, he contributed to his own death.

The law requires, that the deceased should not have
contributed by his negligence to the injury complained
of, and the declaration meeting this requirement, alleges
that ''while using due care, and in the legitimate dis-
charge of his duty'' he was killed.

The allegation was a material one to be made and
proved, and yet the Court below, by rejecting the defen-
dant's fifth prayer, and granting the plaintiff's prayer,
virtually instructed the jury that even although they
might find that the deceased violated his duty, and that

he lost his life in consequence of such violation, he was nevertheless using due care, and not guilty of contributory negligence.

The hypothesis of the fifth prayer, made out a clear case of such contributory negligence as would have precluded a recovery, if believed by the jury; and the appellant was entitled to have this theory of its case fairly and distinctly presented. If the injury to him could not have been inflicted, but for his negligent and improper exposure upon the engine, where he had no business to be, it seems impossible to understand how he can be said not to have contributed to the fatal result by his own negligence—and if this be so, the law is perfectly well settled in this Court, that there can be in such cases no recovery, even although the defendant may also have been negligent. *Miller's case,* 29 *Md.,* 252; *Price's case,* 29 *Md.,* 420; *Balt. & Ohio R. R. Co. vs. Fitzpatrick,* 35 *Md.,* 43; *Geis' case,* 31 *Md.,* 357; *Shipley's case,* 31 *Md.,* 368; *Coughlan's case,* 24 *Md.,* 84.

There was no evidence, that the appellant had not used due diligence in procuring sound machinery and competent employees, and therefore even assuming, that the violation by the deceased of the regulations of the company was not such contributory negligence as would bar a recovery, still the appellee was not entitled to recover.

Before the plaintiff could recover, it was necessary for it to prove that the appellant had failed to meet the obligation resting upon it to use due diligence in procuring sound machinery and competent employees. *O'Connell vs. Baltimore and Ohio Rail Road Co.,* 20 *Md.,* 212; *Shanck vs. N. C. R. W. Co.,* 25 *Md.,* 462; *Cumb'd Coal and Iron Co. vs. Scally,* 27 *Md.,* 589.

An analysis of the testimony will show, that not only did the appellee not prove such failure, but it did not even offer any evidence legally tending to prove it, and

therefore, the first and second prayers of the appellant which asked the Court to instruct the jury that there was no such evidence, should have been granted.

The obligation upon the master is not that machinery, sound in fact, and employees competent in fact, shall be procured, but it merely is that due diligence shall be used to procure them.

Machinery may prove to be unsound, and employees may turn out to be incompetent, but the company's liability in such a case as the one under investigation would not thereby be established. The test of its responsibility is not its *success* in obtaining sound machinery, and securing competent employees, but its *bona fide* diligence in its efforts to procure them—a very wide and clear distinction.

As between co-employees the master does not warrant their competency, and is not responsible to them for each other's negligence. It is only his duty to exercise due care in their selection. This is now settled Maryland law.

In this case, if the engine was originally sound, then its subsequent unfitness and the negligence or want of skill on the part of Jordan in repairing it, are not in themselves any evidence at all of the failure of the company to exercise all reasonable care in his selection—nor do they rebut or tend to rebut in any degree the positive proof the other way on the part of the appellant.

He may have been incompetent in fact, and yet the appellant not thereby liable—he may have been competent in fact, yet negligent or unskillful in this particular instance, and the appellant still not liable—and he may have been incompetent in fact, and negligent and unskillful in repairing the engine, and the appellant even then not liable, for if due diligence was used in procuring the engine and in selecting Jordan, the appellant would not be responsible for the imperfect and defective repairing of

the engine by Jordan, unless it had knowledge of such defective repairing, and failed to use reasonable diligence to remedy it. This knowledge the plaintiff, of course, must prove.

There was no evidence that the appellant had any knowledge or notice of such alleged defective repairing.

The engine was repaired five weeks before the accident, and was in the interval in charge of the engineer Wills. He testified that he never reported to any one of the defendant's agents that the engine was out of order, and considered her as good and safe as any engine on the road. This is the only testimony on the subject.

The plaintiff clearly failed to prove want of due care on the part of the appellant in procuring sound machinery and competent employees, which was its only obligation. It also failed to prove any knowledge on the part of the appellant of any defect in the engine. And upon the testimony offered, the deceased manifestly contributed by his own negligence to his death, as but for it he would not have been injured at all.

Upon these grounds the plaintiff was not entitled to recover, and the appellant's prayers embodying these views which were rejected, should have been granted without modification.

*Jacob Brown* and *Henry W. Hoffman* for the appellee.

The appellee does not seek to enlarge the measure of responsibility. It is not the question of *negligence* between *fellow-servants*, whether of a higher or lower grade. Has there been, in view of all the facts and proof in the cause, "use of due and reasonable diligence in providing safe and sound machinery, and in the selection of fellow-servants of competent skill and prudence?" *Wonder vs. Baltimore & Ohio R. R. Co.*, 32 *Md.*, 417:

"A Court of original jurisdiction should not submit to the jury the finding of a fact of which there is *no* evi-

dence; but if there be *any evidence tending to prove it*, it would be trenching on the province of the jury to refuse the instruction, because the evidence on which it was founded might not be deemed conclusive by the Court." *The Cumb. Coal and Iron Co. vs. Scally*, 27 *Md.*, 601.

The second prayer, which was rejected by the Court, contained no principle of law not embraced in the first, third and sixth prayers, *which were granted*. It was objectionable, moreover, on the ground, that if granted without modification, it took the case from the jury on the same premise which had invoked the modification in the first and fourth prayers. And as it contained no principle not already given to the jury, its only office would have been to multiply prayers, whose effect would be to confuse and mislead. In the discretion of the Court, it was, therefore, properly rejected., *The Cumb. Coal and Iron Co. vs. Scally*, 27 *Md.*, 603; *Whiteford vs. Burckmyer and Adams*, 1 *Gill*, 153.

The hypothesis of the fifth prayer does not make out a case that would bar the appellee's right of recovery. To assume that if the decedent had been elsewhere at the moment of the explosion, the injury inflicted could not have happened, furnishes no excuse for the appellant's culpability, assuming that there was such, unless the person injured contributed to the immediate cause of the injury. What, though Fazenbaker had ridden a half mile or more on the engine in violation of the company's order? The proof is, that at the time of the explosion, the train had reached a point where it was usual to stop fifteen minutes, and had been standing still five minutes before the explosion occurred.

" If the negligence of the railroad were the *proximate*, and that of the party injured the *remote* cause of the injury, the action is maintainable, notwithstanding the party injured may not have been entirely without fault." *North. Cent. Railway Co. vs. The State, use of Price, et al.*, 29 *Md.*, 420.

Moreover, the facts were before the jury, and the appellee's prayer, granted by the Court, submitted properly the law respecting *contributory negligence.*

The appellee's first prayer, which was granted, is not subject to any valid objection. It announced no principle in conflict with the law of the prayers offered by and granted to the appellant.

On the whole, the prayers granted left with the jury all the circumstances which qualified the liabilty of the appellant in the amplest manner. The *law* of the case was as fully and as favorably stated for the defence as they had a right to expect, or the Court was authorized to grant. The appellant was not prejudiced by the rejection of the prayers which were refused. *The Cumb. Coal and Iron Co. vs. Scally*, 27 *Md.*, 603.

STEWART, J., delivered the opinion of the Court.

William Fazenbaker was killed on the 26th March, 1870, by the explosion of a locomotive belonging to the appellant; and the action was brought in the name of the State, for the use of his widow and children, to recover damages from the appellant on account thereof.

Exception has been taken, by the appellant, to the rulings of the Circuit Court, in granting the appellee's first prayer, and rejecting the first, second, fourth and fifth prayers of the appellant, and modifying its first and fourth prayers.

The prayer of the appellee submitted to the jury, amongst other matters, two prominent propositions, which form also, leading considerations in the several prayers of the appellant.

First.—The question of negligence on the part of the deceased, contributing to his own death, which, if found to be true, would defeat the action. To authorize a recovery, the prayer requires the jury to find from the evidence, that at the time of the accident, he was using

ordinary care, and did not contribute to his own death, by the want of ordinary care. The proposition is presented both affirmatively and negatively, that is, before the jury, according to the theory of the prayer in this particular, could find for the plaintiff, they must be satisfied, not only that the deceased was using ordinary care at the time of the accident, but that he did not contribute to his own death by the want of ordinary care. The fifth prayer of the appellant merely involves this question, and requires the Court to determine it.

Second.—Reasonable skill, care and diligence on the part of the appellant, or its agents, which if found to be true, would relieve the appellant from responsibility for the accident. The first, second, third, fourth and sixth prayers of the appellant involve the consideration of this branch of the same question.

What constituted negligence, or ordinary care, or the want of it in the party, contributing to his death; and the reasonable skill, care and diligence exercised on the part of the appellant, to relieve it from responsibility for the fatal occurrence, are questions, according to the nature of the evidence in this case, to be determined by the jury, from all the facts and circumstances. It is their province, from the controverted facts to make the reasonable deductions, and these questions must be referred to the jury. Such is the rule and practice, although in some cases the question of negligence may be a legal one for the Court to decide. *State, use of Miller vs. B. & O. R. R.*, 29 *Md.*, 252; *State, use of Price vs. B. & O. R. R.*, 29 *Md.*, 420; *Balt. City Pass. R. W. vs. Wilkinson*, 30 *Md.*, 224; *B. & O. R. R. vs. Shipley*, 31 *Md.*, 368; *B. & O. R. R. vs. Fitzpatrick*, 35 *Md.*, 44; *B. & O. R. R. Co. vs. State, use of Dougherty*, 36 *Md.*, 366. But the Court will always instruct the jury, if applied to, as to the degree of diligence or skill and care which the law imposes upon the respective parties, and the jury are to determine if the requisite conduct has been observed.

The fifth prayer of the appellant proposed, virtually to withdraw the question of negligence, or want of ordinary care on the part of the deceased, from the jury, and to have it determined by the Court, upon the proposed hypothesis of facts, as a question of law, and it was on that account properly rejected. In our opinion, the facts stated in the prayer do not authorize the Court to pronounce, as matter of law, that they constitute such contributory negligence as would prevent a recovery by the appellee. The case is not of that character in its circumstances as to warrant the intervention of the Court, in withdrawing the question from the jury.

The first and fourth prayers of the appellant, without the modifications made by the Circuit Court, proposed to submit to the jury, upon the hypothesis of facts, assumed respectively in each, that there could be no recovery, unless there was proof that the appellant did not use reasonable care in procuring sound machinery, and faithful and competent employees, and required the Court, at the same time, to instruct the jury; that there was no evidence to show want of such reasonable care.

Evidence had been adduced, and whether sufficient or not was to be determined by the jury; and the Court, very properly, refused the prayer as presented, and made the modification, which left the question, whether reasonable care had been observed by the appellant, to be found by the jury.

The second prayer of the appellant was obnoxious to the same objection as the first and fourth, in assuming there was no proof that the appellant did not use reasonable care in procuring the engine and selecting the employees.

The appellant's third and sixth prayers presented distinctly the question of reasonable care on the part of the appellant, in selecting the co-employees of the deceased, and the procuring engine No. 11, omitting the assump-

tion that there was no evidence applicable thereto, and were granted. The jury having found adversely to the theories of these prayers, could not have been satisfied, from the evidence, that such reasonable care had been observed by the appellant.

In granting the third and sixth prayers of the appellant, the Circuit Court could not have consistently allowed its first and fourth prayers, without the modification made.

From a careful consideration of all the prayers granted, to wit: the appellee's first and appellant's third and sixth absolutely, and first and fourth modified, and the seventh of the appellant conceded, we think the jury were properly instructed as to the law applicable to the facts of the case, and that the appellant has no ground of complaint, so far as the law pertinent thereto has been expounded.

If the jury have misapprehended the facts, that is a matter which this Court has no right to assume, nor power to correct.

*Judgment affirmed.*

(Decided 19th December, 1872.)