## Case No. 17,565.

### WHITEHOUSE v. GRAND TRUNK RY. CO.

[2 Hask. 189.] [1]

Circuit Court, D. Maine. Nov., 1877.

ACTION AGAINST RAILROAD COMPANY — PERSONAL INJURIES — CONTRIBUTORY NEGLIGENCE — RIDING ON ENGINE—COLLISION.

1. The defendant, by introducing evidence in defense, waived its request, made at the close of the plaintiff's evidence, that the court direct a verdict for the defendant.

2. The defendant, by its rule, entitled, "General orders to engineers," providing, "no person shall be allowed to ride on the engine without the permission of the engineer," placed in the hands of the engine driver, authorized him to permit the plaintiff's intestate to ride upon the engine.

3. It was for the jury to say, whether the injury received by plaintiff's intestate while so riding was occasioned solely from causes not incident to such exposed position.

4. The defendant is liable for injuries received by plaintiff's intestate while so in the exercise of due care and so lawfully riding upon its engine running on schedule time with the right of way and carefully and properly man-

---

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

aged and controlled, occasioned by collision with another of its engines, wrongfully and negligently despatched to meet upon the same track the engine upon which the plaintiff's intestate was so riding.

Case for injuries received by plaintiff's intestate, wherefrom he died after lingering a short time, occasioned by the careless and negligent management of defendant's engines and trains. Plea, the general issue. Verdict for the plaintiff for $5000. The defendant moved for a new trial for misdirection, and because the verdict was both against law and evidence.

Thomas H. Haskell and Charles W. Goddard, for plaintiff.

John Rand, for defendant.

Before SHEPLEY, Circuit Judge, and FOX, District Judge.

FOX, District Judge. The deceased was about twenty years of age, and at the time of his death was a fireman in the employ of Boston & Maine Railroad. In March, 1875, he visited his parents at Lewiston in this state, and on the morning of the fifth of that month went to the Lewiston depot to take the train for Portland. He was there introduced by his brother, a locomotive engineer, to Cummings, the engineer of the train, and was invited by Cummings to ride into Portland with him on the engine. He took a seat on the engine, and on their way to Portland a collision occurred at North Yarmouth with an engine coming in an opposite direction under the charge of Noyes, and Whitehouse was injured so that he died the same day. The collision was occasioned entirely through the negligence of Noyes.

Upon the close of the plaintiff's case, the defendant's counsel requested the court to direct the jury to return a verdict for the defendant, which was refused, for the reason that testimony had been offered by the plaintiff, tending to show that for fourteen years it had been customary for the engineers on this road to allow persons to ride on the engines, and which it was claimed by plaintiff's counsel the jury might find to have been done with the knowledge and sanction of the defendant. The defendant then offered testimony bearing upon this point, and also its book of rules and regulations. By thus proceeding in defense, the defendant must be considered as having waived its request for instructions on the plaintiff's case as it originally stood, and the correctness of the rulings upon all the testimony presented to the jury at the close of the cause are alone presented for revision on this motion for a new trial, the jury having rendered their verdict for $5,000 damages.

This book of rules and regulations is a small pamphlet of about fifty pages, a copy of which was given to each of the employés engaged in working the line. There had been different editions, but the one in use at the time of the accident was issued in 1873. The duties of the different classes of the employés of the

road are therein specifically set forth under various heads, printed in large type, so that any employé could easily turn to that portion of the book descriptive of his duties. On page 16 is found a title or division which reads as follows: "General Orders to Engineers." Under this title or division there are twenty-four rules, all relative to the various duties of the party in charge of the engine. It is conceded by the counsel that the word "engineer" in this title was intended to and can only refer to those who are entrusted with the control of the locomotive upon the line of the road, and who are sometimes known as enginemen or engine drivers, but generally as engineers.

The first rule under this title is "that the engineman of every train must be in attendance and see that his engine is in working order, &c."

Rule III is as follows: "No person, except the engineman and fireman, shall be allowed to ride on the engine without the permission of the general manager, superintendent, engineer, or chief officer of the locomotive department. Conductors and brakemen in charge of trains, or off duty, on no account to be allowed to ride on the engine."

The charge of the court relative to this rule was, "that it did not prohibit Cummings from inviting and allowing Whitehouse to ride on the engine, and that from Cummings' testimony they would be authorized to find that Whitehouse at the time of the collision was lawfully on defendant's engine. Under this rule, had Cummings authority to invite Whitehouse to ride on the engine? It would seem to be perfectly clear that he had; that the rule itself in terms authorized the engineer to receive on his engine, at any time, any one he saw fit so to do.

It is argued that the engineer, upon whom by this rule was conferred this authority, is the civil engineer of the road; and it was shown that there were, in the dominion of Canada, in the employ of this road, four civil engineers. These persons do not precisely correspond to the description of the party called for by the rule, as in that, the word employed is simply engineer, whilst those, who are now claimed to have been intended, were known, as Spicer, their superintendent, states, as "chief engineer and assistant engineers." From the word found in the rule, simply "engineer," it would be difficult to decide whether upon the chief or his assistants was thus conferred this authority; but without relying on this answer to the suggestion that the civil engineers of the company were the parties upon whom, as engineers, it was intended to confer this authority, as one member of the court, I am of opinion that these are not the engineers called for by this rule. They were all in Canada; not one within the limits of the state; their duties did not bring them in communication with the locomotives or their movements up and down the line: they have no particular knowledge or information which

would specially designate them, as peculiarly qualified to act in this behalf, and when needed, if the emergency should arise in this or the adjoining states, they would be beyond reach of inquiry, except after long delay.

On the contrary, it cannot be questioned that occasions are constantly arising when it is necessary that one or more of the servants of a railroad, or other persons, should be speedily transported to some portion of the line of the road, as for instance in case of accident or injury to the road bed, &c. If a locomotive is at hand ready to move, who so well qualified to judge of the propriety of receiving such persons upon the engine as its engineer? Being constantly upon the road, acquainted with its condition as well as with his engine and tender, and their fitness for the contemplated purpose, and of the movements of all other trains. he could on the instant determine whether or not it was proper to allow such persons on his engine. Some one upon the train or the engine should be clothed with the authority and the power so to act, and it is for the interest of the road that the engineers should be authorized so to do, and thereby save the delay, which might otherwise ensue in obtaining the assent of the other persons named in the rule. A competent engineer is much better qualified than any other servant of the company to decide whether or not it is expedient to allow persons to ride with him upon his engine, and for this reason he may well have been selected as one of those to be entrusted with this authority.

Waiving all conjecture and theory as to whom the defendant intended by the use of this word engineer, let us see what has actually been said and done in relation to it by the company; for whatever may have been its intentions, if it has not succeeded in clearly manifesting the same by the rule it must abide the consequences. If a party executing an instrument leaves anything ambiguous in its expressions, such ambiguity must be taken most strongly against itself. It has issued its "general orders to engineers" and placed them in the possession of every hand on the line. Its "engineers" is the class of servants to whom these orders are addressed, and to these rules these engineers are compelled to look to ascertain what their orders are, and there they read what they are prohibited from doing and what they are authorized to do; upon an application to them by a party for permission to ride on the engine. they must turn to the rules and "general orders to engineers" to ascertain who may consent thereto. and on the succeeding page they read, that the "engineer" is authorized to grant such permission. It is beyond question, that when any engineer should consult these rules as to his duties upon this subject. he would find that some person described as an engineer was thereby authorized to grant this permit, and why should it be contended that such en-

gineer was of a different class and of a different department than those for whom these rules were prescribed, and who were directed there to search for thier orders and duties. By page fifth they were notified "that no excuse would be received for want of knowledge of these rules." It being conceded that these rules were for the guidance of this class of servants described in their very title as "engineers," when in terms engineers are there found clothed with this power, why should we be called upon to give a different signification to this word engineer in the one instance, from what, it is admitted, was intended to be its manifest signification in the other?

It should be remembered that these rules, designated as "general orders for engineers," are not, and do not purport to be made for the guidance of civil engineers. They would not expect to find their duties defined under that head, and would never consult these rules with such an object, while on the contrary, the locomotive engineer is furnished with them for this sole purpose, to instruct him as to his duties in connection with his engine and its general management.

Argument cannot make it any plainer than is the simple statement of the proposition itself. "General orders" for the engineers are issued by the company, and in these very orders, among other powers and duties conferred upon its engineers, they are to determine when it is proper for others to ride on the engine. The whole of this portion of these rules relates to locomotive engineers alone, and what they shall or shall not do, and it is playing fast and loose with this word to insist that on the one page engineer is intended to describe an engine driver. and on the next, without any explanation whatever, that it shall mean a civil engineer, who in no way has anything to do with the movements of the trains or engines. Throughout the United States this word "engineer," when used in connection with railroads, is invariably employed to designate the party in charge of the locomotive. In scores of opinions in the reports of the decisions of the courts of the various states. this word is so employed; and by Worcester and Webster, an "engineer" is defined as "one who manages an engine," an "engine man," "an engineer."

The jury were instructed, "that if S. D. Whitehouse by his own negligence occasioned or contributed to the injury, the plaintiff could not recover; that if they find it was negligence on Whitehouse's part to ride on the engine, the plaintiff cannot recover; that the injury must have been occasioned by the negligence of defendant or its servants to render it accountable."

Other instructions were given to the jury, which were read from Philadelphia & R. R. R. v. Derby, 14 How. [55 U. S.] 470, and the same which were given to the jury in that case and sanctioned by the supreme court, the principal one being that if the deceased was lawfully on the engine of the defendant at the time of the collision, by the license of the defendant, and was then and there injured by the negligence or disobedience of orders of the company's servants then and there employed on the railroad, the defendant is liable for the injury done and suffered by said Whitehouse. The correctness of this and the other instructions read to the jury from that case is not subject to question in this court. as they were in the very language which there received the approval of the supreme court.

Judge Grier, on page 484 of that case, says: "The liability of the defendants below for the negligent and injurious act of their servant, is not necessarily founded on any contract or privity between the parties, nor affected by any relation, social or otherwise, which they bore to each other. * * * The maxim of respondeat superior, which by legal imputation makes the master liable for the acts of his servant, is wholly irrespective of any contract, expressed or implied, or any other relation between the injured party and the master. If one be lawfully on the street or highway, and another's servant carelessly drives a stage or carriage against him and injures his property or person, it is no answer to an action against the master for such injury, either that the plaintiff was riding for pleasure, or that he was a stock holder in the road, or that he had not paid his toll, or that he was the guest of the defendant or riding in a carriage borrowed from him. * * * In this view of the case, if the plaintiff was lawfully on the road at the time of the collision, the court was right in directing the jury that none of the antecedent circumstances or accidents of his situation could offset his right to recover. * * * When carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they should be held to the greatest possible care and diligence.

The same rule is recognized in Nolton v. Western R. Corp., 15 N. Y. 444, where the road carried a passenger gratuitously who was injured in the mail car, he being a mail agent. The court (pages 447, 448) says: "My conclusion therefore is, that this action cannot be maintained upon the basis of a contract expressed or implied. It necessarily follows that it must rest exclusively upon the obligation which the law always imposes upon any one who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken. The principle, upon which a party is held responsible, does not differ very essentially in its nature from that which imposes a liability upon the owner of a dangerous animal, who carelessly suffers such animal to run at large, by means of which another sustains injury. The basis of the liability

is * * * the culpable negligence of the party."

The defendant requested the court to instruct the jury, "that, if plaintiff's intestate was riding upon the locomotive, he was guilty of a want of due care and cannot maintain this action; that a person travelling upon a railroad is not exercising reasonable care in riding upon the locomotive, and that Whitehouse was travelling without right and at his own risk."

By these requests, defendant claimed that the court should rule as matter of law, that Whitehouse was guilty of negligence by riding upon the locomotive and was there at his own risk; but the court did not adopt this view, but submitted the whole to the jury for their consideration to find whether Whitehouse was or was not guilty of negligence; and we think this ruling was correct under all the circumstances of the case.

In Railroad Co. v. Stout, 17 Wall. [84 U. S.] 664, the supreme court says: "That although the facts are undisputed, it is for the jury and not the judge to determine whether proper care was given, or whether they establish negligence."

We hold if Whitehouse was rightfully on the locomotive by the consent of the defendant under the authority delegated by it to its engineer by rule III, the defendant became answerable for any injuries Whitehouse might sustain from a collision with an engine coming in an opposite direction, which collision was occasioned by the negligence of the servants of the defendant; that under such circumstances he did not assume the risk of such negligence.

Conceding that an engine is not so safe a position as a passenger car, and that if he had been on the car he would not have been hurt, yet it cannot be said that his being on the engine contributed to the immediate cause of the accident. It was said by Pollock, C. B., in Greenland v. Chaplin, 5 Exch. 246: "Where the negligence of the party injured did not in any way contribute to the immediate cause of the accident, such negligence ought not to be set up as an answer to the action."

Whitehouse, being upon the engine not only lawfully, but by the assent of the defendant through one of its agents, who was by their rule authorized to permit him to be there, he on his part thereby assumed only those risks ordinarily incident to his being upon the engine, such as for instance, a greater liability to be thrown from the engine by its irregular movements, etc., and he cannot be said to have agreed to exonerate the defendant from accountability for its negligence. His position upon the engine, even if imprudent and injudicious, he being there with the defendant's consent, does not deprive him of all redress and protection from the defendant's wrong conduct. It may be quite injudicious for a man to build a building, or pile his wood on his own land

in direct proximity to the line of a railroad, and yet it has been decided that under such a condition of things, if his property is destroyed by the negligence of the company, he may have complete redress.

The risks under such circumstances, which the party assumes, are those which necessarily attend the situation when conducted with ordinary care and prudence, and he cannot be presumed to have agreed to exonerate the company from liability for wrongs inflicted by its negligence.

In Willis v. Long Island R. Co., 34 N. Y. 670, which was an action for injury to a passenger when standing on the platform, the court says: "There is no rule of the common law which makes it the duty of the passenger to the carrier to select a position in the vehicle least exposed to danger through the wrongful act of the proprietor. A seat on the outside of a stage coach may be more hazardous than an inside seat if the driver negligently overturns it on a pavement or a hillside, but the selection of that position is neither negligence per se, nor tributary in a legal sense to the injury. Their position, whether judiciously or injudiciously selected, so far as their passengers are concerned, was lawful under these circumstances as between them and the company; and in legal contemplation, it neither caused nor contributed to the injury. The law on this subject was settled in the leading case of Carroll v. New York & N. H. R. Co., 1 Duer, 571, in which this question was directly involved, and the judgment in the superior court in that case was subsequently affirmed in this court."

So in Colegrove v. New York & H. R. Co., 6 Duer, 382, affirmed in 20 N. Y. 492, in which the plaintiff, a passenger, while riding on the platform of one of the cars was injured in a collision, the judge instructed the jury: "The first question to be disposed of is, whether the plaintiff in standing on the platform was himself guilty of such negligence as exempts the defendants from liability. The general rule is that where a party by his own negligence contributes to bring about the occurrence by which the injury is effected, he cannot recover. Now standing upon the platform of the car could, in itself, have had no effect in producing the collision by which the injury was effected. Of itself, therefore, it would be no defense to the company in case of an accident occurring. I mean the mere fact of standing upon the platform of the car." The court, on page 416, says:

"The collision was the proximate, direct, immediate and sole cause of the injury. It is true that, if the plaintiff had not been within the reach of its influence, he would not have been injured. But on the facts as proved, he was in no sense in fault, as between him and either defendant, in being where he was. He was not as to either of them wrongfully there. He owed no duty to either of them which required him to be elsewhere. If he had been

off of the train, the collision would have occurred. His being where he was, not being wrongful as to either defendant, nor a failure to perform any duty which he owed to either of them, it is no defence to an action brought to recover damages caused by their negligence, that the position, in the event of such negligence, a negligence which no one could foresee or had the slightest reason to anticipate, was one of more danger than a seat in one of the cars, and that if he had been seated he might not have been injured. The law looks to the proximate cause of the injury. When a plaintiff did nothing which conduced to that, and at the time of its occurrence, he was lawfully in the position which he occupies, and there is no negligence in not anticipating or foreseeing the possibility of an injury from the negligence of others which, if it should occur, would endanger his safety in any part of the train, and it is by such negligence that he is injured, then there is no negligence on his part, in the legal sense of the term, which contributed to the accident or to injure him."

In Zemp v. Wilmington & M. R. R. Co., 9 Rich. Law (S. C.) 84, the passenger was on the platform and was injured, and he recovered, it being held to be a question for the jury whether his negligence contributed to the injury. See, also, Dunn v. Grand Trunk Ry. Co., 58 Me. 191, and the cases there cited.

In Kerwhaker v. Cleveland, C. & C. R. Co., 3 Ohio St. 172, it is said to be the settled law, "that where the negligence of the defendant is proximate and that of the plaintiff remote, the action can then well be sustained, although the plaintiff is not entirely without fault; and when the plaintiff, in the ordinary exercise of his own rights, allows his property to be in an exposed and hazardous position, and it becomes injured by the neglect of ordinary care and caution on the part of the defendant, he is entitled to reparation, for the reason that, although by allowing his property to be exposed to danger, he took upon himself the risk of loss or injury by mere accident; he did not thereby discharge the defendant from the duty of observing ordinary care and prudence, or in other words, voluntarily incur the risk of injury by the negligence of another." These remarks were applied where a party thus exposed his property; but they are equally applicable, when, under the same circumstances, he suffers personal injury.

In Keith v. Pinkham, 43 Me. 501, the rule is well stated. That case was an action for damages caused by the negligence of the driver to a passenger riding on top of the coach, and who was requested to take an inside seat, and told "that if he continued on top, he did it at his own risk." The learned chief justice says: "It may be true that the plaintiff, by riding outside incurred the peculiar risks, if any there were, arising from his exposed situation. But that is all. He did not assume those resulting from the negligence of the defendant, or those in his employ."

In Peoria, P. & J. R. Co. v. Champ, 75 Ill. 577, it is said that when the plaintiff is guilty of contributory negligence, the railway company is not relieved from its duty to observe all reasonable precautions to prevent injury to the property of the plaintiff.

The instructions given to the jury were read from Philadelphia & R. R. Co. v. Derby, and the facts of that case were very similar to the present; there the plaintiff was invited to ride on the road in a locomotive car engine by its president, and was injured by negligence of those in charge of another engine, and recovered for his injuries. Such a car, as we understand it, is constructed with an engine on the forward part of the car, and seats in the rear, and in many respects is a more dangerous vehicle than the ordinary locomotive upon a passenger train. The latter is run according to time tables, having the right of way, while the locomotive car is like a "wild engine," running as it may, and obliged to keep clear of all other trains, and thus exposed to much greater risk. If a collision occurs, a locomotive car, as we have seen them, is not as heavy and strongly built as the ordinary locomotives, and would, therefore, be much more easily broken and destroyed; and in no respect would it prove as safe a conveyance for a person, accustomed to running on a locomotive, as the locomotive itself. If Derby was guilty of negligence in riding on such a car, it is remarkable that it was never suggested by the counsel of the road, and that the supreme court should have held the defendants liable.

So in the case of The New World v. King, 16 How. [57 U. S.] 469, where one who had formerly been a waiter on the boat was allowed a free passage by the master, and he was injured by an explosion, the steamer was held chargeable for the injury. It was a libel in admiralty, where the question of contributory negligence was for the court, and neither of the courts before which the case was heard intimated that the defendant could succeed on that ground, which they certainly would have done, if the theory of the defence in the present suit is sustainable.

Certainly, King by voluntarily going in the steamer exposed himself to the dangers of the explosion from which he would have been exempt had he remained ashore; and why should he not have been equally chargeable with negligence by subjecting himself to the danger of an explosion, if the deceased is here to be held chargeable with negligence in exposing himself to the danger of collision by riding on the engine? The risk in both cases was altogether too remote, as the party had a right to expect ordinary care and caution would be observed on the part of the carrier. If a collision occurred, the party on the engine was exposed to greater risks than if he had remained at home, and such was also the exact position of King, if the boiler should explode while he was on board; but each party had a right to act on the presumption that noth-

ing of the kind would occur, and that if it did, the law would require an indemnity from the carrier for his neglect.

There is one case not upon the briefs which is directly in point, and which was decided by a very able tribunal, the supreme court of Maryland. Cumberland & P. R. Co. v. Maryland, 37 Md. 156. In that case, the deceased was a brakeman in the service of the company, and his place was in the middle of the train when in motion. On the day of the injury, he left his place on the train and rode for about half a mile on the tool box of the engine, near the boiler. The train stopped, and after standing still for about five minutes, the engine exploded and he was killed. Evidence was offered tending to show that the explosion was owing to the engine being defective and the master mechanic incompetent.

The court was asked to instruct the jury that if the deceased's place was on the middle of the train and he rode on the engine and was on it at the time the accident happened and that but for this conduct on his part the injury inflicted upon him and for which the suit was brought would not have been inflicted upon him, the plaintiff was not entitled to recover.

This was refused. The judge submitted to the jury the question whether at the time of the accident the deceased was using ordinary care and did not contribute to his own death by the want of it; and in its opinion the full court says: "What constituted negligence or ordinary care, or the want of it in the party, contributing to his death, * * * are questions according to the nature of the evidence in this case to be determined by the jury from all the facts and circumstances. It is their province from the controverted facts to make the reasonable deductions, and these questions must be referred to the jury. The fifth prayer proposed virtually to withdraw the question of negligence or want of ordinary care on the part of the deceased from the jury, and to have it determined by the court upon the proposed hypothesis of facts as a question of law, and it was on that account properly rejected. In our opinion the facts stated in the prayer do not authorize the court to pronounce as matter of law that they constitute such contributory negligence as would prevent a recovery by the appellee. The case is not of that character in its circumstances as to warrant the intervention of the court in withdrawing the question from the jury." That case is almost identical with the present on the question of contributory negligence, and it in all respects accords with our rulings at nisi prius.

In the case of Railroad Co. v. Stout, 17 Wall. [84 U. S.] 661, Hunt, J., declares the rule to be this: "That while a railway company is not bound to the same degree of care in regard to mere strangers who are unlawfully upon its premises that it owes to passengers conveyed by it, it is not exempt from responsibility to such strangers for injuries arising from its negligence or from its tortious acts."

The counsel for defendants rely on Robertson v. New York & E. R. Co., 22 Barb. 92, where the party was injured while on the locomotive; but the fact, that he was told before he got on the engine that it was contrary to defendant's rules, gave him full knowledge that he was unlawfully on the engine, and so was without redress.

In Hickey v. Boston & L. R. Co., 14 Allen, 432, the supreme court of Massachusetts ruled as a matter of law that a passenger standing on the platform of the railroad car could not recover for damages he sustained, as he was guilty of contributory negligence. Under all the circumstances of the present case, we think the better course was that sanctioned by the supreme court of Maryland and adopted here, to submit the question of negligence to the jury, since the party injured was a fireman accustomed to ride on locomotives, and who was on defendant's engine at the time by the sanction of the defendant, thereby distinguishing the present from the Massachusetts case.

It is said that five thousand dollars was excessive damages. In the opinion of the court, if either party has reason to complain of the amount of the verdict, it is not the defendant.

Motion overruled.